IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTONIO PEARSON,                :
    Plaintiff            :
    v.                   : Case No. 3:09-cv-97-KRG-KAP
PRISON HEALTH SERVICE, et al.,  :
    Defendants           :

### Order, Report and Recommendation

### Order and Recommendation

      Plaintiff has filed an amended complaint. It will be served on some of the defendants. I recommend that the balance of the amended complaint be dismissed because, except for the claims discussed below, there is no viable federal claim and there is no reason for this court to exercise pendent and supplementary jurisdiction under 28 U.S.C.§ 1367 over any claims of medical malpractice.

      When plaintiff has provided copies of the amended complaint and instructions for service, the Clerk shall forward them and copies of the notice of lawsuit and request for waiver of service to the United States Marshal. The Marshal shall mail a copy of the plaintiff's complaint, notice of lawsuit and request for waiver of service of summons, waiver, and this Order, to defendants Kline, McGrath, Papuga, and Rhodes only. These defendants are requested to waive service pursuant to Rule 4(d). Defendants need file a responsive pleading only to the plaintiff's claims of deliberate indifference.

Report

On April 14, 2009, plaintiff filed an eleven page complaint dated April 10, 2009, naming twenty-eight defendants and reciting plaintiff's dissatisfaction with the medical care he received while an inmate at S.C.I. Somerset, together with a motion for leave to proceed in forma pauperis. docket no. 3, docket no. 1. After screening the complaint under 28 U.S.C.§ 1915A, I recommended dismissal of the complaint for failure to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8, without prejudice to plaintiff filing a complaint in the appropriate state court on any claims of medical malpractice. docket no. 2. The Court agreed. Plaintiff appealed and a panel of the Court of Appeals for the Third Circuit issued a per curiam decision finding that plaintiff had stated claims of deliberate indifference against two nurses identified as John Doe or Jane Doe defendants, against Doctor McGrath, the medical director at S.C.I. Somerset, for an episode in which McGrath allegedly told a physician assistant to place plaintiff in a room overnight despite plaintiff's complaints of pain and bleeding, and then allegedly examined plaintiff and told him his condition was normal, and against a corrections officer, Captain Thomas Papuga, who during the same episode ordered plaintiff to dispose of blood plaintiff was "gushing." docket no. 19-1 at 7-8. Further, although agreeing that other allegations were insufficient

2

to allege deliberate indifference, the circuit ordered me not to dismiss without permitting plaintiff to amend his complaint "unless amendment would be inequitable or futile." docket no. 19-1 at 8. I accordingly did so, granting plaintiff several extensions which consumed the entire year of 2010, to prepare an amended complaint. docket no. 20, docket no. 22, docket no. 28, docket no. 29, docket no. 31, docket no. 32, docket no. 33.

Plaintiff filed his amended complaint. docket no. 35. It is in most respects a copy of the first complaint, except that it is nineteen pages long and names thirty defendants. Plaintiff claims that he has received unsatisfactory medical care everywhere he has been confined, in a previous stint at S.C.I. Somerset (2000-01), at S.C.I. Smithfield (2001-02), at S.C.I. Albion (2002-05), and at Somerset again after 2005. Plaintiff alleges in ¶34 through ¶43 that various proposed defendants examined him at various times between 2000 and 2007, and "refused to send the plaintiff out for further evaluation[1]" because he "was treated as a problem instead

---

1. In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the seminal case for claims prison medical personnel showed deliberate indifference in providing or refusing medical care, the Court ruled that Gamble **failed** to state a deliberate indifference claim against defendant Gray, the prison medical director, where plaintiff alleged that Gray saw him twice (other medical personnel saw Gamble 17 times over three months) and did not cure his severe back pain after a workplace accident in which a 600 pound bale of cotton fell on him. The only treatment Gamble received was bed rest, muscle relaxants, and pain relievers: Gray never took an x-ray or used any other diagnostic technique to determine whether Gamble's pain might be the result of a broken back. Though it is safe to say that most
(continued...)

of a patient." These paragraphs at most allege time-barred medical malpractice claims (a state law claim) but not deliberate indifference[2].

Then, in ¶44, plaintiff returns to the events of April 10-11, 2007, and repeats the allegations of ¶2 of the original complaint, except that Nurse Jane Doe-1 is identified as Denise Thomas. Thomas is alleged to have misdiagnosed plaintiff when he complained of pain at 1:00 p.m., and therefore failed to take further steps to treat plaintiff at that time. Plaintiff does not allege what injury Thomas caused in the four hours that elapsed until he saw the next medical employee. I assume plaintiff could

---

(...continued)
doctors would order x-rays in such circumstances as a matter of course, the Supreme Court observed:
[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice.

2. Allowing amendment of plaintiff's description of these events in a further attempt to state a claim would be both inequitable and futile. The federal claim of deliberate indifference requires the defendant's subjective awareness of the substantial risk of serious harm to the plaintiff. Farmer v. Brennan, 511 U.S. 825, 837 (1994). What plaintiff alleges is that various proposed defendants refused to order unspecified additional diagnostic tests, and each defendant's failure, plaintiff asserts, left him "in constant pain." These are at most attempted malpractice claims, which accrued prior to April 10, 2007, and which are barred by the statute of limitations. Plaintiff cannot even assert the discovery rule because he alleges every proposed defendant's actions caused him "constant pain."

amend the allegations to remedy this lack but at most plaintiff alleges that Thomas was negligent.

At 5:00 p.m. on April 10, 2007, plaintiff complained of pain again. In ¶3 of the original complaint plaintiff alleges that a Jane Doe-2, identified in ¶45 of the amended complaint as Linda Kline, told plaintiff that he would have to wait for treatment until the next day. At 11:00 p.m. plaintiff again complained of pain and was told by a John Doe-1, identified in ¶46 of the amended complaint as D. Rhodes, that since plaintiff was on sick call for the next day and had been seen twice by nurses, he (Rhodes) was not coming to plaintiff's cell[3]. After plaintiff screamed until 2:30 a.m. on April 11, 2007, Rhodes came to plaintiff's cell but forced plaintiff to crawl to a wheel chair and would not help him with his shoes, then placed him in an infirmary cell until he was seen at 7:30 a.m. that day by a Doctor Ghatge and the Medical Administrator, Joseph Visinski. They ordered plaintiff to be taken to the Somerset Hospital. In ¶47 of the amended complaint plaintiff adds that Rhodes made the "conscientious choice" not to call for additional medical attention at that time. I am guessing, since the tone of the rest of the amended complaint is not

---

3. Plaintiff also refers to a proposed defendant John Doe-1 corrections officer as the intermediary of the messages from Rhodes to plaintiff, but nonmedical personnel generally lack the state of mind necessary for a claim of deliberate indifference. Plaintiff does not give any reason why any corrections officer should or could take steps beyond turning a medical matter over to the medical personnel on duty.

complimentary, that plaintiff means "conscious" and not conscientious choice. In ¶48 of the amended complaint plaintiff fleshes out the details of ¶5 of the original complaint, by alleging the nature of the surgery he received at Somerset Hospital and the name of his surgeon, Kumuda Pradhan (John Doe-1 Doctor in the original complaint). Doctor Pradhan allegedly did not tell plaintiff everything that he did during surgery and did not provide plaintiff with a follow-up appointment or take other steps "which defendant Pradhan knew he should have done." Joseph Visinski allegedly lied to plaintiff and told him he had only had an appendectomy (an allegation repeated in ¶54 of the amended complaint); Pradhan allegedly told plaintiff he had removed a "mass/tumor ... connected... to the plaintiff's liver." Plaintiff does not allege what harm Visinski's false statements or Pradhan's lack of follow-up care caused him.

On April 15, 2007, according to ¶49 of the amended complaint (¶6 in the original complaint did not provide the date), plaintiff suffered bleeding, (allegedly from a cut on the inside of plaintiff's penis, see ¶7 in the original complaint), and after a corrections officer got in touch with the medical unit, Linda Kline allegedly told plaintiff just to lie down in bed. Plaintiff complains that a corrections officer failed to go over Kline's head and make a call directly to Kline's superior, but plaintiff also relates that a Sergeant Clippinger happened to be in the area and

6

Clippinger, correctly perceiving the seriousness of the situation, sent plaintiff to the medical unit. There, according to ¶49 and ¶50, the events of April 16, 2007 unfolded, described in the circuit's opinion as Papuga's order to dispose of plaintiff's blood and the exchange between the concerned Physician Assistant (identified in the amended complaint as proposed defendant Thomas Magyar) and the allegedly indifferent Doctor McGrath. took place. Plaintiff, in ¶49, appears to be implicitly alleging that Magyar is liable either for not documenting and reporting McGrath's actions to superior authority or for not taking unspecified actions in defiance of McGrath's orders, or perhaps both. In ¶50 of the amended complaint, plaintiff also adds that Papuga told plaintiff that the order to dispose of the blood in an unspecified way was "in retaliation for past grievances and lawsuits that the plaintiff filed on him and other staff." I am required at this stage of the proceeding to accept plaintiff's allegation that Papuga made this statement admitting retaliation by blood disposal, a claim of first impression.

Paragraphs 50 and 51 of plaintiff's amended complaint elaborate the briefer allegations of ¶6 of the complaint: on April 17, 2007 (the date April 11 here appears to be a misprint of April 17), Doctor McGrath spoke with Debra Lockard or Lockhart, a nurse who saw plaintiff in the medical unit that day. She told McGrath of the seriousness of plaintiff's symptoms, and plaintiff was sent

7

back to the Somerset Hospital that day, where he allegedly had corrective surgery.

In ¶52 of the amended complaint, plaintiff relates that on April 18, 2007, he was discharged by McGrath from the prison infirmary back into the general population and a nurse named Bedford refused plaintiff's request for a wheelchair for no other purpose than to cause plaintiff the pain of walking back to his unit because plaintiff had previously filed a grievance against Bedford. (This amends ¶8 of the original complaint in which the nurse was identified as Jane Doe-3 and no motive was given for her failure to provide plaintiff with a wheelchair.) After plaintiff returned to his unit and made unsuccessful efforts to get a wheelchair from a lieutenant named Doyka, plaintiff received a wheelchair from Deputy Warden Sylvia Gibson at 5:00 p.m. that same day. Plaintiff wraps up the amended complaint by asserting in conclusory fashion that all defendants acted with culpable states of mind and, where the defendants are supervisory personnel or entities such as the Somerset Hospital or the Prison Health Service, they had customs or policies to ratify or encourage the allegedly wrongful actions of the various individual defendants[4].

---

4. An individual defendant in a civil rights action must have personal involvement in the alleged wrongdoing. <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir.2005)(to be adequate a complaint must state the conduct, time, place, and persons responsible). It follows directly from this that "not every official who is aware of a problem exhibits indifference by failing to resolve it."
(continued...)

I am of course obliged to defer to the law of the case as established by the per curiam opinion, and service will therefore be ordered on defendants Kline, Rhodes, Papuga, and McGrath for their allegedly deliberate indifference. The balance of the amended complaint should be dismissed.

Except for the four defendants just mentioned, plaintiff either names defendants who either were merely in the vicinity of events and relayed statements back and forth (like corrections officers John Doe-1 in ¶46, Foust in ¶49, and Rittenour in ¶50), or who might, if the allegations were amended to conform to Pennsylvania substantive law, be exposed to a claim for medical malpractice, (like Nurse Thomas in ¶44 and Doctor Pradhan in ¶48),

---

(...continued)
Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir.1989). Plaintiff completely fails to assert any allegations that would suggest that anyone but the few medical personnel who were in direct contact with plaintiff could have the knowledge necessary for a claim of deliberate indifference. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)(in the absence of unusual facts nonmedical personnel lack the scienter required for civil rights liability in failure to treat cases). Defendants such as Prison Health Services and Somerset Hospital, not being capable of action except through employees, could only be liable (if they were acting under color of state law) if their employees' actions were taken pursuant to a custom or policy. Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978). A policy is an official proclamation or edict, while a custom is a practice that is so permanent and well settled as to virtually constitute law. See Wargo v. Schuylkill County, 348 Fed.Appx. 756, 760 (3d Cir.2009). The plaintiff does nothing to identify either a custom or policy of any defendant. Plaintiff's amended complaint makes the purely circular claim that defendants acted pursuant to an unidentified policy that consisted precisely in authorizing the defendants' actions. If that is sufficient to state a claim, then Iqbal and Rule 8 (and 28 U.S.C.§ 1915A) mean nothing.

or who allegedly acted to benefit plaintiff, like Ghatge, Visinski, Magyar and Gibson.

Further amendment is denied as inequitable[5]. Plaintiff took an entire year to amend his complaint, which itself was filed near the very end of the limitations period, and has managed to come up with nothing more than the very claims identified by the per curiam opinion, plus "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" which I am not obliged to accept as factual allegations, <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949-50 (2009), and time-barred (as to the events before April 10, 2007) and inadequate claims of medical malpractice (as to events before and after April 10, 2007 and as to the Somerset Hospital, Doctor Pradhan, and Nurse Thomas). Although there is a strong federal interest in interpreting and enforcing the guarantees of the Eighth Amendment, there is no reason whatsoever to repeatedly advise plaintiff how to amend his complaint merely to assert pendent claims for medical malpractice. Federal courts do not have special expertise relative to the state courts in such matters, and the defendants against whom plaintiff

---

5. The per curiam opinion does not define "futile" as a basis for denying amendment. In the absence of constraint on the scope and number of amendments any plaintiff can eventually state a claim, so if the per curiam opinion were taken literally no complaint could ever be dismissed. The futility exception should mean that amendment of a <u>pro se</u> complaint should be allowed where the deficiency is a pleading technicality or an inartful or sketchy phrasing of a claim.

obviously seeks to bring such claims and the events on which plaintiff obviously seeks to base such claims are clearly separable from the defendants and events[6] relating to the claims of deliberate indifference. The substantive law is separable as well. See <u>Velazquez v. UPMC Bedford Memorial Hospital</u>, 328 F.Supp.2d 549 (W.D.Pa.2004), <u>analyzing</u> Pa.R.Civ.P. 1042.3.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: 12 January 2011

Keith A. Pesto,
United States Magistrate Judge

Notice by U.S. Mail to:

Antonio Pearson BL-0521
S.C.I. Coal Township
1 Kelley Drive
Coal Township, PA 17866-1021

---

6. Defendants Bedford and Visinski are not exceptions. In ¶52 of the amended complaint, plaintiff adds the same retaliatory motive on the part of Bedford that he now remembers for Papuga, but he alleges no facts that Bedford was indifferent to a serious medical need, because plaintiff's incremental discomfort caused by walking back to the unit is not a serious medical need, and that is the only injury plaintiff alleges. Plaintiff also does not allege deliberate indifference: there is no allegation that a doctor ordered a wheelchairs or that Bedford herself believed a wheelchair was medically necessary. As for Visinski, who is alleged to be the person who repeatedly approved advanced medical care for plaintiff, plaintiff asserts in conclusory fashion in ¶54 of the amended complaint that Visinski did not do all that he could possibly do for plaintiff after the surgery. Even if plaintiff could by trial and error shape that into a state law malpractice claim, what plaintiff does allege in ¶48 of the amended complaint negates any claim of deliberate indifference against Visinski.