IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTONIO PEARSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:09-cv-00097 |
| ) | |
| v. ) | |
| ) | Magistrate Judge Keith A. Pesto |
| DR. ROBERT MCGRATH, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### DR. MCGRATH'S CONCISE STATEMENT
### OF UNDISPUTED MATERIAL FACTS

Dr. McGrath files his Concise Statement of Undisputed Material Facts in support of his Motion for Summary Judgment and Brief in Support:

1. This is a *pro se* prisoner civil rights action in which plaintiff, Antonio Pearson, claims that he was denied proper medical treatment at SCI-Somerset in April 2007 and with regard to an appendectomy performed.

### Pertinent Medical History

2. As Pearson's medical records date back to the 1990's, only the medical records pertinent to his claims related to April 2007 and the appendectomy[1] will be discussed.

3. Pearson was seen and monitored on a very regular basis. There are 32 physician's orders in his chart from March 6, 2007 through May 16, 2008 and 72 progress notes for March 21, 2007 through May 15, 2008. (Ex. 1 and 2, Physician's Orders and Progress Notes).

4. On March 29, 2007, Dr. McGrath examined Pearson due to a complaint about a lump on Pearson's testicle. (Ex. 2, Progress Notes).

---

[1] The appendectomy was performed on April 12, 2007 at Somerset Hospital. (Ex. 2, Progress Notes).

#1987614

5. Dr. McGrath conducted a physical examination and did not feel any lumps. (Ex. 2, Progress Notes).

6. He ordered Lubriderm and to follow up with a physician. (Ex. 1, Physician's Orders).

7. The next day, Pearson presented to P.A. Simpkins with complaints of ear pain. (Ex. 2, Progress Notes).

8. On April 10, 2007, Pearson was seen in the medical department for complaints of right sided pain. (Ex. 2, Progress Notes).

9. Per a verbal order from Dr. Ghatge at 2:50am on April 11, 2007, nursing placed Pearson in the infirmary and put him on bed rest with nothing by mouth until he could be seen by a physician. (Ex. 2, Progress Notes, 4/11/07).

10. Dr. Ghatge saw Pearson on April 11, 2007 and referred him to Somerset Hospital where Pearson was admitted. (Exs. 1 and 2, Physician's Orders and Progress Notes).

11. At the hospital, Pearson had an appendectomy and "something removed from small intestine."[2] (Ex. 2, Progress Notes from Nursing, 4/12/07).

12. Pearson returned to SCI Somerset on April 14, 2007 and reported that he had no restrictions. (Ex. 2, Progress Notes).

13. He was returned to the block per Dr. McGrath's orders. (Ex. 1, Physician's Orders).

---

[2] Per the surgical pathology report from Somerset Hospital, a portion of Pearson's omentum as well as his appendix were removed. (Ex. 4, Pathology Report). The omentum is a fold of the peritoneum connecting the stomach and the abdominal viscera. (http://dictionary.reference.com)

14. On April 15, 2007, at approximately 7:30 p.m., the medical department received a telephone call from a Sergeant that Pearson was bleeding a copious amount from his penis. (Ex. 2, Progress Notes).

15. Per Dr. McGrath's orders, nursing placed Pearson in the infirmary for observation, instructed Pearson to increase his fluid intake and noted that Dr. McGrath had ordered Pearson sent for labs in the morning. (Ex. 1, Physician's Orders).

16. Nursing noted Pearson's abdominal incisions were intact, that there was no blood evidence from the post-operative wounds, that Pearson had no complaints of abdominal discomfort and had dark red Koolaid colored urine. (Ex. 2, Progress Notes, 4/15/07).

17. Later that evening on April 15, 2007, nursing noted that Pearson was resting in bed and denied any pain or discomfort. He was to follow up with a doctor in the morning. (Ex. 2, Progress Notes).

18. At 6:45am on April 16, 2007, Dr. McGrath examined Pearson and determined the bleeding was secondary to a Foley catheter that had been placed during the earlier surgery. (Ex. 2, Progress Notes).

19. He discharged Pearson from the infirmary and ordered him to follow up with a physician's assistant. (Ex. 1, Physician's Orders).

20. Labwork was done on April 16, 2007 and the results reported on April 18, 2007. (Ex. 3, Lab Report).

21. On April 17, 2007 at 8:30am, Dr. McGrath again saw Pearson, noted gross bleeding and sent Pearson to the emergency room. (Exs. 1 and 2, Physician's Orders and Progress Notes).

22. Pearson was back at SCI Somerset by 5:30pm that evening and reported "they burned it to make it stop bleeding." (Ex. 2, Progress Notes).

23. Dr. Ghatge examined Pearson that evening and ordered medications and a stay in the infirmary for observation. (Exs 1 and 2, Physician's Orders and Progress Notes).

24. At 11:30pm on April 17, 2007, nursing noted that Pearson was in the infirmary for observation and that he had undergone cauterization of a urethral tear at Somerset Hospital earlier that day. (Ex. 2, Progress Notes).

25. The next morning on April 18, 2007, at 6:45am, Dr. McGrath examined Pearson and ordered the Foley to stay in place until April 19, 2007. (Ex. 2, Progress Notes).

26. He discharged Pearson from the infirmary, placed Pearson on the treatment line for April 19, 2007 for removal of the catheter and follow up with a physician's assistant on April 20, 2007. (Ex. 1, Physician's Orders).

27. Nursing removed the catheter on April 19, 2007 and Pearson denied any discomfort. (Ex. 2, Progress Notes).

28. Thereafter, Pearson saw various individuals in the medical department but did not see Dr. McGrath again until July 20, 2007 at which time he reported pain in his chest. (Ex. 2, Progress Notes).

29. Dr. McGrath ordered continued participation in the asthma clinic. (Ex. 2, Progress Notes).

30. Pearson then saw a number of individuals for a variety of issues in the medical department and did not see Dr. McGrath again until May 15, 2008 for issues not related to this lawsuit. (Ex. 2, Progress Notes).

**Pertinent Grievance History**

31.   Pearson has filed several grievances over the years and only the ones pertinent to his claims in this case will be discussed.

32.   Pearson filed grievance no. 185474 claiming deliberate indifference for medical treatment he received on April 10, 2007 after complaining about pain in his lower right and front abdomen. (Ex. 5, Official Inmate Grievance No. 185474).

33.   Joseph W. Visinsky, CHCA was the grievance officer at SCI-Somerset who responded to Pearson's grievance. (Ex. 6, Initial Review Response).

34.   According to CHCA Visinsky, Pearson was seen by a nurse on April 10, 2007 at 1:10pm and was in no acute distress. Pearson indicated he was agreeable to wait for sick call on April 12, 2007. However, Pearson was back in medical at 5pm, where he declined medication and had normal vitals. He was brought to medical at 2:50am on April 11, 2007. There was no finding of severe pain or observable distress nor was there any finding of a tumor. Ex. 6, Initial Review Response).

35.   CHCA Visinsky also noted that Pearson had a routine appendectomy. (Ex. ___, Initial Review Response).

36.   Pearson's attempt to appeal grievance no. 185474 was dismissed as untimely. (Ex. 8, June 8, 2007 Letter; Ex. 7, Appeal to Superintendent).

37.   Pearson also filed grievance no. 185475 related to medical care received in April 2007. (Ex. 9, Official Inmate Grievance No. 185475).

38.   In grievance no. 185475, Pearson claimed that on April 15, 2007, he felt pain in his penis and then noticed blood running down his leg. (Ex. 9, Official Inmate Grievance No. 185475).

39. CHCA Visinsky also responded to grievance no. 18475. (Ex. 10, Initial Review Response).

40. The response noted that the medical documentation confirmed trace amounts of blood in the urine and that nursing had noted Pearson did not complain of any pain. (Ex. 10, Initial Review Response).

41. CHCA Visinisky found that Pearson was taken for emergency surgery on April 17, 2007, the urethra was cauterized and a Foley catheter put in place from April 17 to 20, 2007 to insure the urethra healed properly. (Ex. 10, Initial Review Response).

42. CHCA Visinsky noted that the cut in Pearson's urethra was most likely due to the catheterization required for Pearson's prior surgery. (Ex. 10, Initial Review Response).

43. Pearson's attempt to appeal grievance no. 185475 was also dismissed as untimely. (Ex. 8, June 8, 2007 Letter; Ex. 11, Appeal to Superintendent).

44. Pearson filed another grievance no. 186349, related to medical care rendered in April 2007. (Ex. 12, Official Inmate Grievance).

45. In grievance no. 186349, Pearson claimed that he was inappropriately released from the institutional hospital. (Ex. 12, Official Inmate Grievance).

46. CHCA Visinsky again responded for the Department of Corrections and noted that Pearson was sent back to the hospital because of blood in his urine and upon assessment was found to have a cut in his urethra, which was cauterized. (Ex. 13, Initial Review Response).

47. He found that the standard of care had been met. (Ex. 13, Initial Review Response).

48. Pearson appealed and the Superintendent found no evidence of deliberate indifference. (Ex. 14, Appeal to Superintendent).

49. The Secretary's Office of Inmate Grievances and Appeals ("SOIGA") and the Bureau of Health Care Services of the Department of Corrections ("BHCS") also reviewed the grievance and found that the medical care provided to Pearson was reasonable and appropriate. (Ex. 15, July 20, 2007 Letter).

50. Pearson filed grievance no. 193839 claiming complications from his April 2007 surgery. (Ex. 16, Official Inmate Grievance).

51. Sylvia Gibson responded to the grievance and noted no documentation of any complications and pointed to an examination on July 20, 2007 that showed no objective signs or symptoms of the incision with the incision described as well-healed and non-tender. (Ex. 17, Initial Review Response).

52. The Superintendent upheld this decision as did the SOIGA and BHCS. (Ex. 18, Appeal to Superintendent; Ex. 19, Final Appeal Decision).

53. Pearson also filed grievance no. 188559 related to care rendered in April 2007. (Ex. 20, Official Inmate Grievance).

54. In grievance no. 188559, Pearson pointed to grievance nos. 185474 and 185475. (Ex. 20, Official Inmate Grievance).

55. Deputy Superintendent Gibson again responded and noted the documentation from Somerset Community Hospital as to the extent of medical care provided to Pearson. (Ex. 21, Initial Review Response).

56. Pearson appealed to the Superintendent and the SOIGA, who both found (along with the BHCS) that the medical care given to Pearson in April 2007 was reasonable and appropriate. (Ex. 22, Appeal to Superintendent; Ex. 23, Final Appeal Decision).

Respectfully submitted,

PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP


*/s/ Kathryn M. Kenyon*
Kathryn M. Kenyon, Esquire
PA ID. #82262

One Oxford Centre
The Thirty-Eighth Floor
Pittsburgh, PA  15219
(412) 263-2000


Attorneys for Dr. Robert McGrath

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Concise Statement of Undisputed Material Facts** was served this 1st day of June, 2011, upon the following non-ECF registered users in the manner described below:

via 1st class, U.S. Mail, postage prepaid on:

>Antonio Pearson, #BL-0521
>SCI Coal Township
>1 Kelley Drive
>Coal Township, PA 17866-1020


>*/s/Kathryn M. Kenyon*
>Kathryn M. Kenyon, Esquire

#1987614