IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTONIO PEARSON,  :
    Plaintiff  :
    v.  : Case No. 3:09-cv-97-KRG-KAP
PRISON HEALTH SERVICE, et al.,  :
    Defendants  :

Report and Recommendation

Recommendation

    Defendant McGrath has filed a motion for summary judgment, docket no. 53. It should be granted. There are three other defendants against whom plaintiff Pearson stated a colorable federal claim. The amended complaint against them should be denied for failure to prosecute.

Report

    Pearson is serving a life sentence in the Pennsylvania prison system and according to his complaint and amended complaint is dissatisfied with the medical care he has been provided at many, if not all, of the prisons he has been in. Pearson filed a complaint in April 2009 expressing his dissatisfaction with the medical care he received in April 2007 at S.C.I. Somerset. In that month, Pearson complained of abdominal pain, was examined by the medical staff, was referred to the Somerset Hospital for an appendectomy on April 11, 2007, and was returned to prison on April 14, 2007. Apparently during the operation a catheter nicked Pearson's urethra, which Pearson reported to the medical department at the prison in the evening of April 15, 2007. Defendant McGrath

examined Pearson the next morning, April 16, 2007, and sent him to the ER at Somerset Hospital, where Pearson had his cut cauterized the same day. Pearson claimed that a score of defendants violated the Eighth Amendment and demanded in excess of $1 million dollars.

I recommended (and the Court agreed with the recommendation) dismissal of the complaint without prejudice to prosecuting any state law malpractice claims in the Court of Common Pleas. Pearson appealed and the Third Circuit vacated in an unsigned nonprecedential per curiam opinion (NPO) which held that Pearson had stated a claim of deliberate indifference against Doctor McGrath and against three other defendants.

The author of the NPO incorrectly and unjustly characterized my handling of the complaint, suggesting that I had "conditioned Pearson's right to file objections on his return of an authorization to collect payments toward the filing fee from his prison account." docket no. 19 at 5. In fact, under the circuit's own precedent, I do not even need an authorization to order the collection of filing fees. See Arsad v. Gerula, No. 09-3379, slip op. at 3 n.1 (3d Cir. February 19, 2010)(Appellant's obligation to pay appeal fees under the PLRA arose from filing notice of appeal and motion for leave to proceed in forma pauperis, and he "can not avoid paying those fees simply by failing to sign and file the Authorization form.") My purpose in notifying inmates that they have an option to withdraw an action before filing fees are

2

assessed is to spare them the unnecessary expenditure of their limited funds in a case that belongs in state court. The innuendo by the author of the NPO that I do so in some way to "condition" an inmate's filing of pleadings is 180 degrees off. So is the completely unnecessary shot in the footnote, docket no. 19 at 5 n.1, that suggested that it was error not to specify whether the complaint failed to state a claim under Rule 12 or under the Prison Litigation Reform Act and that the procedure used in screening inmate complaints under 28 U.S.C.§ 1915A was "somewhat unorthodox and potentially problematic." In fact dismissal without prejudice to proceeding in state court is the orthodox thing to do when at the outset of litigation all federal claims have been dismissed, and every court to publish an opinion holds that the standards for failure to state a claim under Section 1915A and under Rule 12(b)(6) are identical. See Hill v Lappin, 630 F.3d 468 (6th Cir.2010); Wolfson v. Carlucci, 232 Fed.Appx. 849 (10th Cir. 2007); Mitchell v. Farcass, 112 F.3d 1483 (11th Cir.1997).

The NPO ordered me to permit Pearson to amend his complaint. I did. Pearson filed several motions for additional time to amend his complaint. I granted them. This consumed the entire year of 2010 until Pearson's amended complaint, docket no. 35, was filed in January 2011.

I screened the amended complaint pursuant to 28 U.S.C.§ 1915A, and directed the Marshal to serve McGrath and three other

3

defendants when Pearson supplied copies of his complaint and directions for service. I recommended dismissal of the rest of the amended complaint for failure to state a federal claim, again recommending that any state law claims be brought in state court. docket no. 36. Pearson filed a meritless motion for extension of time to file objections, docket no. 37, which was denied in my case management order, docket no. 45. Pearson, representing that I had never ruled on his motion for extension, filed untimely objections a month later, at docket no. 47 and docket no. 48. Pearson never, however, sent copies of his complaint for service to the Clerk. Pearson either sent a copy of his complaint directly to McGrath or Mcgrath's counsel was monitoring the docket independently because McGrath appeared by counsel, who filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6). docket no. 39. Pearson filed a conclusory motion for an open-ended extension of time to reply to the motion to dismiss, docket no. 42, which I denied, docket no. 45. The extension of time was also unnecessary because the NFO that plaintiff Pearson stated a claim against defendant McGrath was the law of the case. I accordingly ordered the parties to direct their efforts toward the next stage, on motion for summary judgment, and recommended denial of McGrath's motion to dismiss in a Report and Recommendation to which no one objected. I also issued a case management order which stated in part:

> 3. Motions for summary judgment are not optional, and shall address at least the issues: 1) whether there is a genuine

4

dispute of fact about whether any defendant was deliberately indifferent to Pearson's medical needs, and 2) whether there is a genuine dispute of fact about whether any deliberately indifferent action of any defendant caused Pearson harm. See Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) (court can order summary judgment sua sponte so long as the parties are notified that they must come forward with all relevant evidence); Fed.R.Civ.P. 56(f)(2)(upon notice and reasonable time to respond the court may grant summary judgment on grounds not raised by a party). Motions shall be filed on or before June 17, 2011.

No one objected or asked for more time. McGrath filed a timely motion, supported by a brief and extensive exhibits detailing Pearson's medical care during the time period Pearson claimed his Eighth Amendment rights were being violated. docket no. 53, docket no. 54, docket no. 55, docket no. 56. Pearson wrote a letter to the Clerk asking for forms to file a complaint against me, docket no. 50, and sent a copy of a request for production of documents, docket no. 52. Pearson then filed a motion for an open-ended extension of time, docket no. 58, docket no. 59, "because the defendant has failed to turn over the requested discovery material." In response I directed Pearson to file a motion to compel explaining what material defendant McGrath had not provided, and stated that if appropriate I would extend the discovery period and his deadline to respond to the summary judgment motion. docket no. 61. Pearson has not replied in the two weeks since.

Pearson has (or had) a malpractice case against the person who caused the catheter cut during his appendectomy. As McGrath points out in his motion, Pearson has no competent evidence

5

of the standard of care, of any breach thereof, or that McGrath caused him any harm. Because Pearson cannot prove that McGrath was deliberately indifferent or that McGrath caused him harm simply by Pearson's own allegations, summary judgment should be entered in favor of defendant McGrath on the merits.

Pearson's complaint against McGrath, and against Rhodes, Papuga, and Kline, should be dismissed for failure to prosecute. In <u>Poulis v. State Farm Fire and Casualty Co.</u>, 747 F.2d 863, 868 (3d Cir.1984), the Third Circuit set forth six factors to be weighed in considering whether dismissal of a civil case as a sanction for failure to prosecute was proper: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. A <u>pro se</u> plaintiff bears all of the responsibility for his litigation conduct. Even if his dilatory behavior is not willful, Pearson's failure to take steps to effect the service of the complaint, or even to respond within two weeks to an order to provide service copies "immediately," docket no. 61, which followed an order in January 2011 to provide service copies, docket no. 36, makes dismissal of the complaint the only

appropriate sanction. I was lenient in granting Pearson requested extensions to amend his complaint. I denied extensions where the request was obviously unsupportable. Giving Pearson an unrequested extension, which is the practical effect of leaving the matter hanging, would be inequitable. Pearson never took the first step toward making the unserved defendants aware of his claims against them by providing the Clerk with copies of his complaint for service. His original John Doe complaint was filed almost at the expiration of the limitations period, and after the detour to the circuit, defendants would now be presented with allegations as to their conduct more than four years ago.

Inmate complaints often result in the naming of as many defendants as the inmate can remember (and in the case of John Doe defendants, even defendants whom the plaintiff only imperfectly remembers) even though there is no legal claim against them in the complaint, no viable legal claim within any likely amendment to the complaint, and no interest on the part of the inmate in following through. They generate large litigation expenses which divert resources even from the medical care provided to inmates, not to mention other uses the Commonwealth of Pennsylvania and its taxpayers might have for the money. This case is a textbook example.

Pearson, who according to McGrath was the subject of 32 physician's orders and 72 progress notes between March 6, 2007 and

7

May 16, 2008 (compare that to the medical care available to a noninmate; as the Eleventh Circuit observed this past week, the average expenditure for medical care by an uninsured person not in prison is about $2000 dollars **per year**), complained to personnel in the medical department of abdominal pain on April 10, 2007. At 2:50 a.m. on the next day, April 11, 2007, Dr. Ghatge ordered Pearson to be admitted to the infirmary and placed on bed rest with no food or drink by mouth. Ghatge saw Pearson later that same morning and sent him to the Somerset Hospital, where he was admitted, diagnosed with appendicitis, had a urinary catheter (Foley catheter) inserted, and had an appendectomy. Pearson suffered a cut of his urethra, probably as a result of the catheterization. Pearson returned to prison on April 14, 2007. The next day, Pearson was bleeding from his penis, and a corrections officer reported this to personnel at the medical department at about 7:30 p.m. On the evening of April 15, 2007, McGrath, who appears for the first relevant time in these events, ordered Pearson admitted to the infirmary and ordered lab tests for April 16, 2007. That next morning at 6:45 a.m., McGrath saw Pearson, diagnosed the bleeding as the result of the catheter, and discharged Pearson. McGrath saw Pearson again the next day, April 17, 2007, at 8:30 a.m. Where Pearson's urine was dark red on the first examination, Pearson now exhibited bright red blood, and McGrath, perceiving this to be fresh bleeding, sent Pearson to the

Somerset Hospital emergency room. Personnel there performed a cauterization. Pearson then returned to prison the same day. Chatge ordered Pearson to be admitted to the infirmary, where he was observed until his discharge on April 19, 2007. That same day the catheter was removed.

That's it. No evidence whatsoever that McGrath did or failed to do anything, knowing that in doing so he was disregarding a serious risk of harm to Pearson. No evidence of harm to Pearson. Pearson's claims he suffered excruciating pain while waiting for medical care. I do not minimize that pain by saying that there is no evidence that McGrath caused it or that McGrath was indifferent to it or that Pearson suffered any harm whatsoever as a result of it. There is not even hint of expert evidence that Pearson's waiting times for medical care are probative of some lack of reasonableness, much less of deliberate indifference. Pearson's reasonable desire that when in pain he be attended to immediately does not constitute evidence of a legal duty on the part of any defendant.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: 17 August 2011

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

    Antonio Pearson BL-0521
    S.C.I. Coal Township
    1 Kelley Drive
    Coal Township, PA 17866-1021