IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTONIO PEARSON,                   :
    Plaintiff              :
    v.                     :Case No. 3:09-cv-97-KRG-KAP
PRISON HEALTH SERVICE, et al.,     :
    Defendants             :

### Memorandum Order

This matter was referred to Magistrate Judge Keith A. Pesto for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C.§ 636, and Local Civil Rule 72.

The Magistrate Judge filed a Report and Recommendation on September 30, 2015, docket no. 143, recommending that the remaining defendants' motions for summary judgment at docket no. 126 and docket no. 130 be granted. The parties were notified pursuant to 28 U.S.C.§ 636(b)(1) that they had fourteen days to file written objections to the Report and Recommendation.

Plaintiff filed timely objections at docket no. 144, to which defendant Dr. McGrath replied at docket no. 145. The objections raise seven issues:

1) Plaintiff asserts that the evidence creates a dispute of fact about the state of mind (deliberate indifference) of defendant Nurse Thomas. Objections at 3-4. The objections mis-state the record in asserting that Nurse Thomas "attributed his pain to a muscle pull, a diagnosis she is neither permitted or qualified to make." Objections at 4. There was some sparring at Nurse Thomas's deposition about the meaning of the word "diagnose:" Nurse Thomas's

testimony was that nurses make "determinations" and "assessments," while doctors make "diagnoses." See Thomas depo. at 18-20, docket no. 129-10. But this is not evidence plaintiff can offer to prove that nurses are not permitted or qualified to make diagnoses: this was semantic ping-pong about competing definitions of the word "diagnose," namely, deciding that the cause of the pain was appendicitis versus a muscle pull versus ordinary recognition of the signs and symptoms (in this case that plaintiff was complaining of pain but showed no guarding or facial grimacing and was animated and mobile) of the patient.

Later in his objections, plaintiff argues that Captain Papuga was deliberately indifferent for not recognizing plaintiff's serious medical need when plaintiff allegedly presented a corrections officer with blood plaintiff had collected, so plaintiff obviously recognizes that even a layperson is capable of "diagnosing" a serious medical need. Plaintiff's attempt to argue that Nurse Thomas was deliberately indifferent for not making a diagnosis she was not qualified to make is an attempt to exploit the different meanings of the word "diagnose" in inconsistent fashion solely to advance plaintiff's case.

The only claim against each defendant is that he or she was deliberately indifferent to one of plaintiff's serious medical needs, initially to be treated for appendicitis, and subsequently to be treated for bleeding allegedly due to a cut suffered during

2

surgery. To avoid summary judgment plaintiff must produce evidence sufficient to create a genuine dispute that a prison official:

> kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994). The evidence relevant to Nurse Thomas would, if believed by a jury in the light most favorable to the plaintiff, permit a jury to find that Nurse Thomas failed to diagnose appendicitis, and that she misdiagnosed a possible muscle pull from plaintiff's coughing as a result of his known asthma. There is no expert testimony to indicate what the relevant standard of nursing care is when a nurse is presented with the symptoms plaintiff reported to Nurse Thomas. A jury could not, therefore, find that Nurse Thomas's failure to diagnose appendicitis or anything more serious than a muscle pull was even negligent. A jury certainly could not find that Nurse Thomas subjectively drew the conclusion that plaintiff had appendicitis (or any other serious medical need) and disregarded it.

2) Plaintiff asserts that the evidence creates a dispute of fact about the state of mind of defendant Nurse Kline. Objections at 4. What is true about Nurse Thomas is true about Nurse Kline, who saw plaintiff later in the day than Nurse Thomas. According to plaintiff, Nurse Kline "recognized the seriousness of Mr. Pearson's situation because she informed him that his gallbladder was failing" but did not "escalat[e] Mr. Pearson's situation" or

discuss his care with other staff. If a jury believed plaintiff's account of what Nurse Kline said and did, that would support a finding that Nurse Kline made an incorrect diagnosis. Any failure on Nurse Kline's part to appreciate that plaintiff was suffering from an incipient case of appendicitis, or even that a case of "failing gallbladder" required some more treatment than the over-the-counter medications offered by Nurse Kline, could be the basis for legal liability only upon proof of the standard of nursing care. The evidence, even in the light most favorable to plaintiff, cannot support a finding that Nurse Kline in fact drew an inference that plaintiff had appendicitis or some other condition requiring urgent care and disregarded it.

3) Plaintiff asserts that the evidence creates a dispute of fact about the state of mind of defendant Nurse Rhodes. Objections at 5-6. Nurse Rhodes' liability is based on two elements, first that he in fact recognized the possibility of appendicitis but responded by keeping plaintiff in the infirmary rather than immediately sending him to the hospital. This is a classic case of dissatisfaction with the treatment option, not a claim of deliberate indifference. Plaintiff offers no expert opinion, and therefore has no competent evidence that the standard of care for a person with the signs and symptoms he presented to Nurse Rhode required immediate hospitalization. Plaintiff would not be able to prove that Nurse Rhodes should have drawn the conclusion that

4

plaintiff needed to be immediately hospitalized (a negligence claim), much less contend that a jury could properly find that Nurse Rhodes in fact drew the conclusion that plaintiff needed to be immediately hospitalized and disregarded it.

The other facet of plaintiff's claim against Nurse Rhodes is that Nurse Rhodes exhibited deliberate indifference by "forcing" plaintiff to crawl across his cell to the wheelchair Nurse Rhodes brought to plaintiff's cell, before Nurse Rhodes took plaintiff back to the infirmary where Nurse Rhodes examined plaintiff and admitted him to the infirmary. Assuming the jury believed plaintiff's testimony, it could find that Nurse Rhodes was callous but not deliberately indifferent to a serious medical need, because plaintiff presents no evidence whatsoever to indicate that he could not ambulate, much less that Nurse Rhodes believed it, or that crawling inflicted some severe pain on him above the level of pain he was already suffering, much less any competent evidence that requiring a plaintiff complaining of stomach pains - but not yet diagnosed with appendicitis or anything more severe than stomach pains, and not exhibiting any other symptoms such as vomiting - to ambulate violated any standard of care. To confuse Nurse Rhodes' alleged bad bedside manner with indifference to a serious medical need would make any assertion of discourtesy unaccompanied by evidence that it caused any injury into an Eighth Amendment jury question. That is not the law.

plaintiff needed to be immediately hospitalized (a negligence claim), much less contend that a jury could properly find that Nurse Rhodes in fact drew the conclusion that plaintiff needed to be immediately hospitalized and disregarded it.

The other facet of plaintiff's claim against Nurse Rhodes is that Nurse Rhodes exhibited deliberate indifference by "forcing" plaintiff to crawl across his cell to the wheelchair Nurse Rhodes brought to plaintiff's cell, before Nurse Rhodes took plaintiff back to the infirmary where Nurse Rhodes examined plaintiff and admitted him to the infirmary. Assuming the jury believed plaintiff's testimony, it could find that Nurse Rhodes was callous but not deliberately indifferent to a serious medical need, because plaintiff presents no evidence whatsoever to indicate that he could not ambulate, much less that Nurse Rhodes believed it, or that crawling inflicted some severe pain on him above the level of pain he was already suffering, much less any competent evidence that requiring a plaintiff complaining of stomach pains - but not yet diagnosed with appendicitis or anything more severe than stomach pains, and not exhibiting any other symptoms such as vomiting - to ambulate violated any standard of care. To confuse Nurse Rhodes' alleged bad bedside manner with indifference to a serious medical need would make any assertion of discourtesy unaccompanied by evidence that it caused any injury into an Eighth Amendment jury question. That is not the law.

4) Plaintiff asserts that the evidence creates a dispute of fact about the state of mind of defendant Doctor McGrath. Objections at 6-8. Plaintiff makes two points about the Report and Recommendation's analysis of Doctor McGrath's liability: at page 13, the "someone" not identified by the Magistrate Judge was Nurse Magyar, and at page 12, the statement that there were no restrictions placed on plaintiff by Doctor Pradhan is incorrect because there was a lifting restriction of 20 pounds. Those are correct observations but immaterial. The identity of Nurse Magyar as the "someone" makes no difference to Doctor McGrath's actions, and as with Nurse Rhodes the alleged temperament of Doctor McGrath makes no difference to his liability. Plaintiff offers no evidence, much less competent expert evidence, that Doctor McGrath's actions breached any relevant standard of care. And as the Report and Recommendation explained at page 18, where the Magistrate Judge discusses the claim against Doctor McGrath, there was no restriction placed on plaintiff by Doctor Pradhan that Doctor McGrath contradicted or countermanded, and in fact Doctor McGrath affirmatively gave instructions for plaintiff's care. A challenge to the adequacy of those instructions would be a matter of state law. Even if a jury accepted all of plaintiff's evidence there is insufficient evidence of deliberate indifference by Doctor McGrath.

5) Plaintiff asserts that the evidence creates a dispute of fact about the state of mind of defendant Captain Papuga. Objections at 9. I adopt the analysis of the Report and Recommendation. I add that plaintiff's claim that Captain Papuga did not call medical and told plaintiff to dispose of the blood plaintiff had collected to hide any medical condition rests entirely on a citation to ¶68 of docket no. 137, Plaintiff's Supplemental Statement of Material Facts, the source of which is ¶7 of plaintiff's affidavit, the Pearson Declaration, docket no. 140-3. The only relevant part of that paragraph is:

> I [complained of bleeding and pain and] showed Sgt. Ritenour the glove with the amount of blood that was in it. Instead of contacting medical Sgt. Ritenour called (sic) Capt. Papuga of the situation. When Sgt. Ritenour came back, he indicated to me that Capt. Papuga told him to tell me to throw the blood away.

There is no way to derive from that statement the conclusion that Captain Papuga did not call the medical service. Plaintiff has no evidence for such an allegation.

6) Plaintiff asserts that the Magistrate Judge erred in "invading the province of the jury by making findings that the Defendants' actions and/or inaction did not cause Mr. Pearson to suffer any injuries." Objections at 12. There is no need to discuss injury because there is no competent evidence of deliberate indifference by any defendant.

7) Plaintiff asserts that the Magistrate Judge erred in finding plaintiff's evidence insufficient without expert testimony because

expert testimony is not needed in this case. Objections at 12. Expert testimony is not necessary in every deliberate indifference case but it is particularly necessary in this case. Plaintiff cannot claim that he did not receive treatment, either by his initial referral to the Somerset Hospital for surgery less than 24 hours after his first complaint of pain, or by his second referral to the hospital for treatment of the bleeding probably caused as a result of the surgery. Since the assertions that Nurse Rhodes and Doctor McGrath were personally unpleasant are irrelevant, plaintiff's entire claim rests on the assertions that his care was inadequate because the referrals to the hospital should have been sooner. How much sooner (or whether time was of the essence at all either time) these referrals should have been made is not something that plaintiff can establish by his own testimony or even by evidence that defendants could have done something differently. In the absence of competent evidence that any defendant breached a standard of care, plaintiff could not prove negligence, much less deliberate indifference.

Upon de novo review of the record of this matter, the Report and Recommendation, and the timely objections thereto, the following order is entered:

AND NOW, this **18th** day of December, 2015, it is

ORDERED that defendant McGrath's motion for summary judgment at docket no. 126, and defendants Papuga, Kline, Rhodes, and Thomas's motion for summary judgment at docket no. 130 are granted. The Report and Recommendation is adopted as the opinion of the Court. The Clerk shall mark this matter closed.

BY THE COURT:

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE

Notice to counsel of record by ECF